UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

─────────────────────────────

DERRICK FLOYD, 06-B-0286,

        Petitioner,

    -v-                         08-CV-6246(MAT)
                                        **ORDER**

JAMES CONWAY, Superintendent,
Attica Correctional Facility,

        Respondent.

─────────────────────────────

## I.    Introduction

*Pro se* petitioner Derrick Floyd ("petitioner"), has filed a timely petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging his conviction in Erie County Supreme Court of Criminal Possession of a Weapon in the Second Degree (former N.Y. Penal L. § 265.03(2)). Petitioner was convicted following a jury trial before Justice Russell P. Buscaglia, and was subsequently sentenced to a determinate term of imprisonment of fifteen years plus five years of post-release supervision.

## II.  Factual Background and Procedural History

### A.    Trial and Conviction

On the night of February 18, 2005, a birthday party took place at the Palace Nightclub at Main and Balcom Streets in the City of Buffalo. T. 532.[1]  Although the party was private, the general public was still allowed to enter the bar. T. 534. At some point

─────────────────

[1] Citations to "T.__" refer to the trial transcript.

during the early morning hours of February 19, several young people entered the bar that looked like they were associated with a gang. T. 569. Around 2:30a.m., there was an argument on the dance floor and security guards began to escort patrons out of the club. T. 535-536, 572-573. As people were being removed by security, gunshots were fired outside. T. 538-539, 575. When the commotion subsided, Curtis Holloway ("the victim") was seen lying in the doorway of the bar. T. 383. He was shot in the back, left thigh, and left foot, and subsequently died as a result of multiple gunshot wounds. T. 1108-1109.

Petitioner was identified by two patrons as having a weapon in his hand at the time of the incident. T. 371, 385, 438, 736. One of those patrons testified that he observed petitioner fire the handgun into the crowd, towards the front door of the club. T. 734-735. The manager of the club also testified that he had seen petitioner at the Palace Nightclub that night, as he was familiar with petitioner through his family and from the neighborhood. T. 571-572. The Palace Nightclub bartender also recalled serving the person she identified as the petitioner a "double shot" of Hennessy Cognac. T. 543.

Petitioner presented an alibi defense at trial, calling two witnesses that testified to petitioner's presence at his sister's home on the night of February 18-19. T. 1131-1133, 1141-1143, 1147, 1119-1195. Additionally, petitioner testified in his own

behalf, claiming that he was on probation at the time, and was at his sister's home between 9:00 and 9:30p.m. in compliance with his 10:00p.m. curfew. 1233, 1235.

The jury found petitioner guilty of second-degree weapon possession[2] and was sentenced as a second felony offender to a determinate, fifteen-year term of imprisonment, followed by a five-year period of post-release supervision. S. 11.[3]

## B.  Direct Appeal and Post-Conviction Remedies

Through counsel, petitioner filed a brief in the Appellate Division, Fourth Department, in which he raised the following issues for appeal: (1) he was denied his constitutional right to be present at a material stage of trial when the trial court conducted an *in camera* hearing outside of his presence; (2) the prosecutor's improper cross-examination of an alibi witness deprived petitioner of a fair trial; (3) the pre-trial identification procedures were unduly suggestive; (4) the trial court failed to inquire as to a potential conflict of interest; (5) a <u>Batson</u> violation; (6) the verdict was against the weight of the evidence; and (7) the sentence was harsh and excessive. <u>See</u> Petitioner's ("Pet'r")

---

[2] Under Indictment No. 00435-2005, petitioner was charged with Murder in the Second Degree, (N.Y. Penal L. § 125.25(2)), Criminal Possession of a Weapon in the Second Degree (former N.Y. Penal L. § 265.03(2)), and Criminal Possession of a Weapon in the Third Degree ((N.Y. Penal L. § 265.02(1)). The third-degree weapon possession count was dismissed by the court with the prosecution's consent. Petitioner was convicted of the remaining weapon possession charge and was acquitted of murder following his jury trial. <u>See</u> Respondent's ("Resp't") Appellate Br. at 3 (Ex. B.).

[3] Citations to "S.__" refer to the sentencing transcript.

Appellate Br. 9-42 (Ex. B). The Fourth Department unanimously affirmed the judgment of conviction. <u>People v. Floyd</u>, 45 A.D.3d 1457 (4th Dept. 2007); <u>lv. denied</u>, 10 N.Y.3d 811 (2008).

Petitioner then filed the instant petition for habeas corpus (Dkt. #1), alleging the same grounds as he did on direct appeal. <u>See</u> Petition ("Pet.") ¶ 12(A)-(G). For the reasons that follow, I find that petitioner is not entitled to the writ, and the petition is dismissed.

## III. Discussion

### A. General Principles Applicable to Federal Habeas Review

#### 1. Standard of Review

Under the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), a federal court may grant habeas relief to a state prisoner only if a claim that was "adjudicated on the merits" in state court "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or if it "was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." § 2254(d)(2). A state court decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of

materially indistinguishable facts." <u>Williams v. Taylor</u>, 529 U.S. 362, 413 (2000). The phrase, "clearly established Federal law, as determined by the Supreme Court of the United States," limits the law governing a habeas petitioner's claims to the holdings (not dicta) of the Supreme Court existing at the time of the relevant state-court decision. <u>Williams</u>, 529 U.S. at 412; <u>accord</u> <u>Sevencan v. Herbert</u>, 342 F.3d 69, 73-74 (2d Cir. 2002), <u>cert. denied</u>, 540 U.S. 1197 (2004).

A state court decision is based on an "unreasonable application" of Supreme Court precedent if it correctly identified the governing legal rule, but applied it in an unreasonable manner to the facts of a particular case. <u>Williams</u>, 529 U.S. at 413; <u>see also</u> <u>id.</u> at 408-10. "[A] federal habeas court is not empowered to grant the writ just because, in its independent judgment, it would have decided the federal law question differently." <u>Aparicio v. Artuz</u>, 269 F.3d 78, 94 (2d Cir. 2001). Rather, "[t]he state court's application must reflect some additional increment of incorrectness such that it may be said to be unreasonable." <u>Id.</u> This increment "need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." <u>Francis S. v. Stone</u>, 221 F.3d 100, 111 (2d Cir. 2000) (internal quotation marks omitted).

Under AEDPA, "a determination of a factual issue made by a State court shall be presumed to be correct. The [petitioner] shall

have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); <u>see also</u> <u>Parsad v. Greiner</u>, 337 F.3d 175, 181 (2d Cir. 2003) ("The presumption of correctness is particularly important when reviewing the trial court's assessment of witness credibility."), <u>cert. denied sub nom.</u> <u>Parsad v. Fischer</u>, 540 U.S. 1091 (2003). A state court's findings "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 340 (2003).

**B.  Merits of the Petition**

> **1.  Right to Be Present at Material Stage of Trial (Ground One)**

Petitioner alleges that he was denied his right to be present at a material stage of his proceedings when the trial court conducted an *in camera* <u>Hinton</u> hearing[4]. Pet. ¶ 12(A). The Appellate Division rejected petitioner's contention that the court erred in conducting the <u>Hinton</u> hearing *ex parte* because the hearing did not constitute a material stage of trial during which petitioner's presence was required.  <u>Floyd</u>, 45 A.D.3d at 1458.

On September 7, 2005, after the jury had been selected and sworn, the prosecutor advised the trial court that "an important prosecution witness" had informed her that he had been approached

---

[4] Before granting a party's request to close the courtroom, a hearing must be held. <u>People v. Hinton</u>, 31 N.Y.2d 71 (1972).

by unknown individuals on two occasions prior to petitioner's arrest. At both incidents, the individual told the witness that he knew the witness had spoken to the police about the shooting and that he had "better do the right thing and say no more." T. 306, 307. The prosecutor therefore requested partial closure of the courtroom during that witness' testimony, and the trial court reserved decision. T. 308-310, 333. The following day, the trial court ruled that prior to testimony of the witness, it would conduct an *ex parte* examination at which only the prosecutor would be allowed to be present. The trial court informed defense counsel that he could submit questions which the court would ask the witness if counsel chose to do so. T. 405.

The trial court subsequently ruled that the courtroom would be closed during that witness' testimony with the exception of any members of the bar, the media, the victim's family, and the petitioner's mother. T. 721. Defense counsel, for the record, objected to the procedure employed by the court, stating he chose not to submit questions to the court because he "would have no ability to observe what the effects of those questions would be and what the responses would be," and that he had "confidence that the Court would adequately investigate." T. 721-722.

The constitutional right of a criminal defendant to be present at all material stages of a trial is rooted in the Sixth Amendment, but is protected by the Due Process Clause of the Constitution in

situations where the defendant is not actually confronting witnesses or evidence. See United States v. Gagnon, 470 U.S. 522, 526 (1985). A criminal defendant has a due process right to be present for trial proceedings "to the extent that a fair and just hearing would be thwarted by his absence and to that extent only." Snyder v. Massachusetts, 291 U.S. 97, 107-08 (1934), overruled on other grounds by Malloy v. Hogan, 378 U.S. 1 (1964). In order to establish a violation of the due process clause, a defendant must show that his presence "would contribute to the fairness of the procedure." Kentucky v. Stincer, 482 U.S. 730, 745 (1987). Stated another way, a defendant's right to be present is "triggered only when the defendant's 'presence has a relation, reasonably substantial, to the fulness of his opportunity to defend against the charge.'" Cohen v. Senkowski, 290 F.3d 485, 489 (2d Cir. 2002) (quoting Snyder, 291 U.S. at 105-06 (1934)).

"The right to be present at trial does not preclude a court from conducting an ex parte hearing where appropriate." Adams v. Greiner, No. 02 Civ. 6328(GEL), 2004 WL 912085, *12 (S.D.N.Y. April 29, 2004). In the instant case, petitioner's presence at the *ex parte* conference would not have furthered his ability to defend against the charges he faced at trial. The Hinton hearing was not concerned with the witness' trial testimony; rather, it focused on the threats received by the witness and whether his fear of reprisal and his unwillingness to testify in open court were

legitimate. Petitioner does not allege that he would gained anything from the attending the closure hearing. See Gagnon, 470 U.S. at 527. Moreover, the *in camera* hearing was conducted in order to evaluate the prosecution witness' fear for his safety and found it to be genuine. Petitioner's presence, therefore, "would [have defeated] the whole point of the legitimate in camera request." People v. Vargas, 88 N.Y.2d 363, 379 (1996).

Because he cannot show that "his presence at the closure hearing would have been useful in ensuring a more reliable determination" of the issue before the court, he has failed to establish any violation of his right to be present. Pastrana v. Senkowski, No. CV 97-5158(RR), 1999 WL 1129050, *6 (E.D.N.Y. Oct. 1, 1999); see also, DePallo v. Burge, 296 F.Supp.2d 282 (E.D.N.Y. 2003) (petitioner's right to be present at all material stages of trial was not infringed by his absence from ex parte conference between his counsel and state trial court to memorialize counsel's concerns that petitioner had perjured himself.); see e.g., Stone v. Stinson, 121 F.Supp.2d 226, 241 (W.D.N.Y. 2000) (holding that a defendant's absence from trial court's *in camera* conference with prospective juror who informed court of threatening telephone call he received relating to defendant's trial did not violate Sixth Amendment Confrontation Clause; fact-finding was not at issue during conference and court's discussion with prospective juror had no bearing on defendant's right to cross-examine any witness.);

The Appellate Division, therefore, did not contravene Supreme Court precedent in rejecting petitioner's constitutional claim, and habeas relief cannot lie for this ground.

## 2. Improper Cross-Examination (Ground Two)

Petitioner claims that the prosecutor's cross-examination of defense alibi witness Amber Smith ("Smith") was improper because she failed to lay the proper foundation, thereby depriving petitioner of due process and a fair trial. Pet. ¶ 12(B). The Appellate Division held,

> Here, the People laid the proper foundation
> for impeaching the credibility of that alibi
> witness through the use of her prior silence
> by establishing "that the witness was aware of
> the nature of the charges pending against the
> defendant, had reason to recognize that [she]
> possessed exculpatory information, had a
> reasonable motive for acting to exonerate the
> defendant and, finally, was familiar with the
> means to make such information available to
> law enforcement authorities."

Floyd, 45 A.D.3d at 1459 (quoting People v. Dawson, 50 N.Y.2d 311, 321 n.4 (1980)).

Evidentiary rulings are generally a matter of state law and present no federal constitutional issue. See Roberts v. Scully, 875 F.Supp. 182, 189 (S.D.N.Y.), aff'd, 71 F.3d 406 (2d Cir. 1995); see generally Estelle v. McGuire, 205 U.S. 62, 67-68 (1991) ("federal habeas corpus relief does not lie for errors of state law."). "In order to prevail on a claim that an evidentiary error deprived the defendant of due process under the Fourteenth Amendment he must

show that the error was so pervasive as to have denied him a fundamentally fair trial." Collins v. Scully, 755 F.2d 16, 18 (2d Cir. 1985) (citing United States v. Agurs, 427 U.S. 97, 108 (1976)). Satisfying this standard requires the petitioner to "establish that the evidence was (a) erroneously admitted under New York law and (b) 'sufficiently material to provide the basis for conviction or to remove a reasonable doubt that would have existed on the record without it.'" Mannino v. Graham, No. 06 Civ. 6371, 2009 WL 2058791, at *4 (E.D.N.Y. July 15, 2009) (quoting Collins, 755 F.2d at 19).

Under New York law, the proper cross-examination of alibi witnesses for a criminal defendant requires that a proper foundation be established before such a witness is questioned as to why he did not come forward sooner than he did with the exculpatory information. See People v. Dawson, 50 N.Y.2d 311 (1980). The prosecutor must demonstrate that the witness: (1) was aware of nature of charges pending against defendant, (2) had reason to recognize that he possessed exculpatory information, (3) had a reasonable motive for acting to exonerate defendant, and (4) was familiar with means to make such information available to law enforcement authorities. Dawson, 50 N.Y.2d at 321 n.4. Petitioner contends that the fourth prong had not been met prior to the prosecutor's cross-examination of Smith regarding her alleged failure to promptly come forward. Pet'r Appellate Br. at 15.

At trial, the defense called alibi witness Amber Smith ("Smith"), petitioner's 16-year-old cousin that had lived with him and his sister during February, 2005. Smith testified that petitioner was at home asleep on the couch on the date and time of the Palace Nightclub shooting. T. 1188-1195. During cross-examination, the prosecutor began to elicit testimony from Smith regarding her pretrial silence as an alibi witness. A bench conference was then held, after which the trial court permitted defense counsel to question Smith outside the presence of the jury regarding her failure to come forward. T. 1205-1210.

That questioning revealed the following: (1) Smith was aware of petitioner's arrest and that he was a suspect in the shooting at the Palace Nightclub after reading about the incident in a newspaper; (2) when she heard people saying that police were looking for petitioner, she expressed disbelief that he could be a suspect because she knew that he had been home with her the night of the shooting, and that information "would be helpful to him"; (3) the petitioner was her "favorite cousin" and she would want to do anything she could to help him; and (4) despite being privy to this information, Smith decided not to go to the police station or call police because it "didn't cross her mind" and because "she didn't think it would do any good." Smith went on to explain that because she was 16 years-old, she believed police would not take her seriously, in spite of her admission that she had contacted

police in the past after a physical confrontation with her uncle, and knew how to contact the police by dialing 911. T. 1210-1219.

The trial court subsequently ruled that the prosecutor would be allowed to question Smith on her failure to come forward after finding that the Dawson criteria were met, including the fourth prong, which was of particular concern to the trial court due to Smith's age. T. 1220. As the appellate court observed, "[t]he record does not support defendant's contention that the People failed to establish that the witness was familiar with the means to make the information available to police. The witness testified that she knew the location of the police headquarters and that she in fact had telephoned the police on a prior occasion." Floyd, 45 A.D.3d at 1459.

The record is clear in the instant case that the prosecutor laid a proper foundation for the cross-examination of Smith. Consequently, petitioner has not set forth an error of state evidentiary law, let alone an error of constitutional magnitude. See, e.g., James v. Ricks, No. 01 CV 4106 SJ, 2003 WL 21142989, *8 (E.D.N.Y. March 6, 2003) (petitioner's fair trial claim based on an erroneous evidentiary ruling was meritless where petitioner "failed to meet even the minimal requirement of showing that the challenged photographs were erroneously admitted into evidence."). Petitioner's due process claim therefore must fail, and habeas relief is denied on this ground.

### 3. Unduly Suggestive Identification Procedure (Ground Three)

Petitioner next contends that the manner in which pre-trial photo arrays were presented to the witnesses was unduly suggestive. Pet. ¶ 12(C). The Fourth Department rejected petitioner's argument on the merits. <u>Floyd</u>, 45 A.D.3d at 1459.

On February 19, 2005, Buffalo Police detectives went to the home of witness Anthony Lark ("Lark"), where they showed Lark a photo array. Detective Mary Gugliuzza ("Det. Gugliuzza") had contacted Lark on a prior occasion and advised him that she wanted to "show him some pictures of a possible shooter." W. 21-22.[5] The array was placed on Lark's kitchen table, and he was asked to "look at all the faces and pick out the person that he saw shoot the gun at the Palace." W. 22-23. Less than two minutes later, Lark pointed to petitioner's photo, stating, "that's the one I saw." W. 25. Det. Gugliuzza did not tell Lark that he had to make an identification or that the suspect's photo was contained in the array. W. 23. She did not identify the six individuals pictured, nor did she suggest or indicate to Lark which photo he should select. W. 23, 28, 43. On cross-examination, Det. Gugliuzza stated that Lark appeared reluctant to pick out a photo from the array, telling officers that he was "afraid of [sic] his life." She assured Lark, however, that

---

[5] Citations to "W.__" refer to the <u>Wade</u> hearing transcript. <u>See</u> <u>United States v. Wade</u>, 388 U.S. 218 (1967) (the due process clause precludes states from obtaining evidence through unduly suggestive identification procedures).

the police would do their best to "keep his name confidential." W. 40-41.

The same day, Det. Gugliuzza showed a photo array to witness Jackie Anderson ("Anderson"). W. 29, 30. Anderson met the detective in front of the Palace Nightclub after he was contacted to "view some photos." W. 29-30. Inside the patrol car, Anderson viewed the array from the rear seat, with illumination from the street lights, the car's dome light, and a flashlight. Det. Gugliuzza told him to look at the faces and pick out the person he saw fire the gun at the Palace. Anderson "immediately" chose petitioner's photo. W. 31. Anderson was not told he had to select a photo, nor was he told which to select. W. 31. Det. Gugliuzza acknowledged that both she and her partner failed to read the pre-printed instructions on the array itself to either witness. W. 42, 47.

Due process requires that criminal trials "proceed consistently with 'that fundamental fairness' which is 'essential to the very concept of justice.'" Dunnigan v. Keane, 137 F.3d 117, 125 (2d Cir. 1998) (quoting Lisenba v. California, 314 U.S. 219, 236 (1941)). "When the prosecution offers testimony from an eyewitness to identify the defendant as a perpetrator of the offense, fundamental fairness requires that that identification testimony be reliable." Raheem v. Kelly, 257 F.3d 122, 133 (2d Cir. 2001). Where a witness has made a pretrial identification, a challenge to that identification and to an in-court identification

of the defendant at trial triggers "a one-step or two-step inquiry." <u>United States v. Maldonado-Rivera</u>, 922 F.2d 934, 973 (2d Cir. 1990); <u>see also, e.g.</u>, <u>Raheem</u>, 257 F.3d at 133.

The first step is to determine whether the pretrial identification procedures were unnecessarily suggestive which requires asking if it created "a very substantial likelihood of irreparable misidentification." <u>Manson v. Brathwaite</u>, 432 U.S. 98, 116 (1977). If the procedures were not unduly suggestive, then reliability of the identification testimony is a question that goes to the jury. <u>E.g.</u>, <u>Foster v. California</u>, 394 U.S. 440, 442 n.2 (1969); <u>accord</u> <u>Jarrett v. Headley</u>, 802 F.2d 34, 42 (2d Cir. 1986). If, however, the procedures are found to be unnecessarily suggestive, the second step is to determine whether the identification testimony is nevertheless admissible because it is "independently reliable rather than the product of the earlier suggestive procedures." <u>Maldonado-Rivera</u>, 922 F.2d at 973; <u>see also</u> <u>Raheem</u>, 257 F.3d at 133. In sum, "the identification evidence will be admissible if (a) the procedures were not suggestive or (b) the identification has independent reliability." <u>Id.</u>

On appeal, petitioner argued that the detective's statements to the witnesses to pick out the shooter suggested to them that a suspect's photo was among the array. Even if Det. Gugliuzza were to have advised the witnesses that a photograph of the suspect was included in the array, this would nonetheless not have been "fatal

to the propriety of the procedure." <u>People v. Smith</u>, 140 A.D.2d 647 (2d Dept. 1988); <u>see also</u> <u>People v. Brennan</u>, 261 A.D.2d 914, 915 (4th Dept.); <u>lv. denied</u>, 94 N.Y.2d 820 (1999). Indeed, habeas courts in this Circuit have consistently held that "a substantial likelihood of irreparable misidentification is not created when police officers merely tell a lineup viewer that the suspected perpetrator will be in the lineup." <u>Priester v. Strack</u>, No. 98 CIV. 7960(LAK), 2001 WL 980563, *4 (S.D.N.Y. Aug. 23, 2001) (citing <u>Hodge v. Henderson</u>, 761 F.Supp. 993, 1007-1008 (S.D.N.Y. 1990) ("it is implicit in the viewing of a lineup that a suspect might appear.... [S]uch information does not predispose the viewer of the lineup to select any particular person ...."), <u>aff'd</u>, 929 F.2d 61 (2d Cir. 1991)); <u>Green v. Connell</u>, NO. 05-CV-5795 (CBA), 2006 WL 3388656, *8 (E.D.N.Y. Nov 21, 2006) ("it is implicit in the display of a line-up that a suspect is among the persons viewed, and stating this fact to a witness is thus insufficient to create a substantial likelihood of misidentification."). Moreover, the record indicates that the array was otherwise proper. <u>See, e.g.</u>, <u>Sales v. Harris</u>, 675 F.2d 532, 538 (2d Cir. 1982) ("As to the lineup, the only hint of suggestiveness emanated from the police officer's statement to [the victim] just prior to viewing the lineup that a suspect was in custody. Although this court has expressed disapproval of such a statement . . . suggestiveness in

this case was minimal since the statement preceded an otherwise acceptable lineup.")

Accordingly, I cannot find that the procedure employed by Det. Gugliuzza was unnecessarily suggestive. Because the array at issue was not suggestive, there is no need for the government to prove an independent source for an in-court identification. The Appellate Division's determination was not contrary to or an unreasonable application of Supreme Court law, and habeas relief is denied on this ground.

### 4. Conflict of Interest (Ground Four)

Petitioner claims that the court's failure to inquire into petitioner's waiver of a potential conflict to determine whether it was knowing, voluntary, and intelligent, deprived petitioner of his right to effective assistance of counsel. Pet. ¶ 12(D). The Appellate Division concluded that the trial court conducted a sufficient inquiry "once it became aware that the defense counsel had previously represented a prosecution witness." Floyd, 45 A.D.3d at 1459.

The Sixth Amendment guarantees the right to representation free from conflicts of interest. See Wood v. Georgia, 450 U.S. 261, 270 (1981) (citing Cuyler v. Sullivan, 446 U.S. 335 (1980); Holloway v. Arkansas, 435 U.S. 475 (1978)); United States v. Levy, 25 F.3d 146, 152 (2d Cir. 1994) (citation omitted). This right is denied where the attorney has a potential conflict that resulted in

prejudice to the defendant, or an actual conflict that adversely affected the attorney's performance. <u>Winkler v. Keane</u>, 7 F.3d 304, 307 (2d Cir. 1993). "An attorney has an actual, as opposed to a potential, conflict of interest when, during the course of the representation, the attorney's and defendant's interests 'diverge with respect to a material factual or legal issue or to a course of action.'" <u>Winkler</u>, 7 F.3d at 307 (quoting <u>Cuyler</u>, 446 U.S. at 356 n.3). Thus, even if an actual conflict is demonstrated, the minimum showing of adverse effect required to undermine a conviction is a showing that "some plausible alternative defense strategy or tactic might have been pursued, and that the alternative defense was inherently in conflict with or not undertaken due to the attorney's other loyalties or interests." <u>United States v. Schwartz</u>, 283 F.3d 76, 92 (2d Cir. 2002). As for the duty of the trial judge, "[u]nless the trial court knows or reasonably should have known that a particular conflict exists, the court need not initiate an inquiry." <u>Cuyler</u>, 446 U.S. at 447.

Here, petitioner has alleged that there was a potential conflict of interest with his attorney because his attorney had previously represented a prosecution witness. Pet'r Appellate Br. 24. The record reveals that the trial court was alerted to the possibility of a conflict of interest and made the appropriate inquiry. <u>See</u> <u>Cuyler</u>, 446 U.S. at 447; <u>People v. Gomberg</u>, 38 N.Y.2d 307 (1975).

Prior to the <u>Wade</u> hearing conducted on May 20, 2005, defense counsel told the court, after reviewing material provided for the hearing, that he discovered that one of the witnesses was a client whom he had represented on several occasions. W. 16. Counsel stated that he had alerted the prosecutor to this fact and had spoken to petitioner, who had no objection to counsel's representation at the <u>Wade</u> hearing. W. 16. He further stated that if there was a conflict in the future, he and the prosecutor would attempt to resolve it. W. 16.

The trial court then advised petitioner that he had the right to a conflict-free attorney "who is only going to represent you and is not going to have any other interest in mind." W. 16. After ascertaining that petitioner understood what defense counsel had discussed with him and what counsel said in court, petitioner affirmatively answered that he still desired to have defense counsel represent him at the hearing and subsequent trial. W. 17. Petitioner was then advised that if he changed his mind, he should tell defense counsel who would then alert the court. W. 17. At the conclusion of the hearing, the trial court reminded counsel that if a possible conflict issue should arise, he should contact the court before jury selection. W. 98.

It is clear from the record that petitioner was made aware of the fact that his attorney had previously represented a prosecution witness on a series of criminal matters. I find that petitioner had

an adequate knowledge of the potential conflict to properly waive his right to conflict-free counsel. <u>See</u> <u>Williams v. Meachum</u>, 948 F.2d 863, 867 (2d Cir. 1991) ("In reviewing a defendant's waiver, however, we are ultimately concerned less with the exact words used by the trial judge than with whether the facts and circumstances of the case indicate that the defendant fully appreciated his situation and made a properly informed decision.").

Assuming, *arguendo*, petitioner's waiver was invalid, he nonetheless fails to establish that he was prejudiced by the potential conflict. <u>Cuyler</u> holds that "the mere possibility of conflict is insufficient to impugn a criminal conviction." 446 U.S. at 350. Thus, when a petitioner alleges that a conflict is potential, as opposed to an actual conflict, he must show that he suffered prejudice as a result. <u>Winkler</u>, 7 F.3d at 307. Counsel's prior representation of a prosecution witness was disclosed to petitioner prior to trial, and petitioner indicated on the record that he was aware of the ramifications and wanted counsel to continue representing him. Contrary to petitioner's claim on direct appeal, <u>see</u> Pet'r Appellate Br. at 25, defense counsel fully and vigorously cross-examined the witness regarding his prior convictions. <u>See</u> T. 587-591. His ability to do so was thus not hampered by any reluctance to attack the witness' credibility. <u>See, e.g.,</u> <u>United States v. Cunningham</u>, 672 F.2d 1064, 1068 (2d Cir. 1982). Accordingly, petitioner cannot demonstrate that the outcome

of his trial would have been different had he been represented by other counsel. His argument that the court's colloquy was inadequate is equally without merit. Consequently, this Court cannot say that the decision of the Appellate Division was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). Habeas relief is denied on this ground.

### 5. __Batson__ Violation (Ground Five)

Petitioner argues that his constitutional rights were violated by the prosecutor's "discriminatory use of peremptory challenges" during jury selection. Pet. ¶ 12(E). The Appellate Division held, "the court did not err in denying [defendant's] __Batson__ challenge. The court properly determined that the prosecutor's explanation for exercising a peremptory challenge with respect to a prospective juror was race-neutral, and defendant failed to meet his ultimate burden of establishing that the explanation was pretextual." __Floyd__, 45 A.D.3d at 1459.

In __Batson v. Kentucky__, the Supreme Court held that the Equal Protection Clause of the Constitution prohibits a prosecutor from excluding prospective jurors "solely on account of their race or on the assumption that black jurors as a group will be unable to

impartially consider the State's case against a black defendant."
476 U.S. at 89. There are three steps to a _Batson_ inquiry.
Initially, the opponent of a peremptory challenge must make out a
_prima facia_ case of discrimination. _Purkett v. Elem_, 514 U.S. 765,
767 (1995). The burden of production then shifts to the proponent
of the strike to come forward with a race-neutral explanation. _Id._
"The second step of this process does not demand an explanation
that is persuasive, or even plausible." _Id._ at 767-68. If a
race-neutral explanation is provided, the trial court must then
decide whether the opponent challenging the strike has proved
purposeful discrimination. _Id._ at 767. That determination is a
finding of fact entitled to deference by the reviewing court.
_Hernandez v. New York_, 500 U.S. 352, 364-66 (1991); _see_ _Purkett_,
514 U.S. at 769 ("[I]n habeas proceedings in federal courts, the
factual findings of state courts are presumed to be correct, and
may be set aside, absent procedural error, only if they are 'not
fairly supported by the record.'") (citation omitted); _United
States v. Douglas_, 525 F.3d 225, 239 (2d Cir. 2008) ("Since a
finding as to whether there was intentional discrimination is a
finding of fact, and the trial court findings in this context
largely will turn on evaluation of credibility, the trial court's
finding as to whether the prosecutor's reason was race-neutral may
be overturned only if that finding is clearly erroneous.")
(citation omitted); _see generally_ 28 U.S.C. §§ 2254(d)(2), (e)(1).

Juror #13, a female from the City of Buffalo, was among the first panel of jurors questioned. During jury selection, Juror #13 related that she was married, the mother of three children, and was employed as an assistant coordinator and credit counselor. J.S. 145, 176.[6] In response to questioning by the court if anyone on the panel had been the victim of a crime, Juror #13 stated that her car had been stolen and her home burglarized in years prior. J.S. 90-91. She revealed that she knew the defendant who had stolen her car, and that he was arrested, prosecuted, and sent to jail. Id. With respect to the home burglary, no one was arrested and the electronic and personal items that were stolen from the juror's home were not recovered. J.S. 91. She further indicated that the Buffalo Police did not investigate the crime, and that at the time she was "not satisfied" with the outcome, but "[n]ow it's whatever." J.S. 92. Juror #13 then told the court that she would "not hold it against [the police]" for the lack of investigation into the burglary of her home. J.S. 92, 163.

The prosecutor exercised a peremptory challenge to Juror #13, to which defense counsel asked for "foundation reasons for excusing number thirteen," explaining that the prosecutor may have challenged the juror because his quota was filled as there were already African American jurors on the jury. J.S. 187, 190. Accordingly, the trial court required the prosecutor to provide

---

[6] Citations to "J.S.__" refer to the jury selection transcript.

race-neutral reasons for his challenge. The prosecutor explained that while Juror #13 said she was no longer upset about the lack of investigation into the burglary of her home, he observed that she was "clearly upset" in her response, and pointed out that he had not challenged two similarly-situated African Americans who were seated jurors. J.S. 190-191. The trial court denied counsel's Batson motion, stating that, "the words she used and from her tone and her demeanor, it appeared to me . . . she was still upset at the fact that no investigation was conducted." Furthermore, the witness list contained Buffalo Police officers, and the juror's home burglary occurred in the City of Buffalo. Finally, the court found, that the other African Americans on the jury did not have prior experience with the law similar to Juror #13. J.S. 191-192.

The Second Circuit has repeatedly held that the impression of conduct and demeanor of a prospective juror during *voir dire* may provide a legitimate basis for the exercise of a peremptory challenge. Brown v. Kelly, 973 F.2d 116, 121 (2d Cir. 1992); McCrory v. Henderson, 82 F.3d 1243, 1247-48 (2d Cir. 1996); U.S. v. White, 552 F.3d 240, 252 (2d Cir. 2009). "Similarly, a juror's perceived bias against law enforcement can constitute a race-neutral explanation for a peremptory challenge." Green v. Travis, 414 F.3d 288, 300 (2d Cir. 2005) (citing United States v. Rudas, 905 F.2d 38, 40-41 (2d Cir. 1990)).

The reason advanced for the prosecutor's challenge to Juror #13 had a specifically articulated and permissible basis. See <u>Wells v. Ricks</u>, No. 07 Civ. 6982(CM)(AJP), 2008 WL 506294, *9 (S.D.N.Y. Feb. 26, 2008) (valid race-neutral reason found based on juror who placed her hand over her mouth when answering questions and had an "unsettling gaze"). The trial court, which made a similar observation concerning Juror #13 (that she appeared upset), was in the best position to observe the demeanor of the prospective juror and the prosecutor. Its determination that the prosecutor's reasoning was race-neutral, therefore, is entitled to deference. See <u>Hernandez</u>, 500 U.S. at 364-66. Petitioner has provided no basis for this Court to reject the trial judge's findings. The trial court heard argument on the peremptory strike, and gave defense counsel the opportunity to respond. See J.S. 191-193. In sum, the trial court conducted a "meaningful inquiry into 'the decisive question ... whether counsel's race-neutral explanation for a peremptory challenge should be believed.'" <u>Jordan v. LeFevre</u>, 206 F.3d 196, 201 (2d Cir. 2000) (quoting <u>Hernandez</u>, 500 U.S. at 365).

Accordingly, the state court's factual determination that there was no intentional discrimination is entitled to a presumption of correctness, and petitioner has not rebutted that presumption with any evidence. Accordingly, the state court's determination was not an unreasonable determination in light of the facts presented, and petitioner's <u>Batson</u> claim is denied.

###### 6. Petitioner's Remaining Claims Are Not Cognizable on Habeas Review

###### a. Weight of the Evidence (Ground Six)

Petitioner contends that the jury's verdict was against the weight of the evidence. Pet. ¶ 12(F). The respondent has correctly argued that petitioner's allegation is not subject to review in a federal habeas court. Resp't Mem. 26 (Dkt. #7).

Challenges to the weight of the evidence supporting a conviction, unlike challenges to the sufficiency of the evidence[7], are not cognizable on federal habeas review. Maldonado v. Scully, 86 F.3d 32, 35 (2d Cir. 1996). A claim that a verdict was against the weight of the evidence derives from N.Y. Crim. Proc. L. § 470.15(5), which permits an appellate court in New York to reserve or modify a conviction where it determines "that a verdict of conviction resulting in a judgment was, in whole or in part, against the weight of the evidence." N.Y. Crim. Proc. L. § 470.15(5). Thus, the "weight of the evidence" argument is a pure state law claim grounded in the criminal procedure statute, whereas a legal sufficiency claim is based on federal due process principles. People v. Bleakley, 69 N.Y.2d 490, 495 (1987). Since a weight of the evidence claim is purely a matter of state law, it is not cognizable on habeas review. See U.S.C. § 2254(a); Estelle

_____

[7] The Court notes that petitioner did not raise a sufficiency of the evidence claim on direct appeal, or in his leave letter to the New York Court of Appeals.

v. McGuire, 502 U.S. 62, 68 (1991) ("In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States.").

Accordingly, petitioner's weight of the evidence claim is dismissed.

### b.   Harsh and Excessive Sentence (Ground Seven)

Finally, petitioner contends that his sentence is harsh and excessive. Pet. ¶ 12(G). However, a petitioner's assertion that a sentencing judge abused his discretion in sentencing is generally not a federal claim subject to review by a habeas court.  See Fielding v. LeFevre, 548 F.2d 1102, 1109 (2d Cir. 1977) (petitioner raised no cognizable federal claim by seeking to prove that state judge abused his sentencing discretion by disregarding psychiatric reports) (citing Townsend v. Burke, 334 U.S. 736, 741 (1948) ("The [petitioner's] sentence being within the limits set by the statute, its severity would not be grounds for relief here even on direct review of the conviction, much less on review of the state court's denial of habeas corpus.")).  Moreover, a challenge to the term of a sentence does not present a cognizable constitutional issue if the sentence falls within the statutory range.  White v. Keane, 969 F.2d 1381, 1383 (2d Cir. 1992); accord Ross v. Gavin, 101 F.3d 687 (2d Cir. 1996) (unpublished opinion).

Here, petitioner was sentenced as a second felony offender o

a determinate term of imprisonment of fifteen years for second-

degree weapon possession.  S. 10-11. The permissible range for this

offense, a "C" violent felony, is five to fifteen years,

determinate. N.Y. Penal L. § 70.06(6)(b). Although petitioner was

sentenced to the maximum term of imprisonment, his sentence is not

outside the range prescribed by New York's sentencing statute, and

petitioner therefore does not state a claim for habeas relief.  As

such, this claim must be dismissed.

## IV.  Conclusion

For the reasons stated above, Derrick Floyd's petition for

writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied, and

the action is dismissed.  Because petitioner has failed to make a

"substantial showing of a denial of a constitutional right," 28

U.S.C. § 2253(c)(2), the Court declines to issue a certificate of

appealability. See, e.g., Lucidore v. New York State Div. of

Parole, 209 F.3d 107, 111-113 (2d Cir. 2000).  The Court hereby

certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from

this judgment would not be taken in good faith and therefore denies

leave to appeal as a poor person.  Coppedge v. United States, 369

U.S. 438 (1962).

**SO ORDERED.**

S/Michael A. Telesca

_____

MICHAEL A. TELESCA
United States District Judge

Dated:    August 26, 2010
          Rochester, New York